UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hilary Ann Kost, a/k/a Hilary Kost DeVary,
and Jon Eldon DeVary,

          Plaintiffs,                  Civil No. 13-583 (JNE/TNL)

v.                                   ORDER

John Hunt et al.,

          Defendants.

---

Marshall H. Tanick and Teresa J. Ayling appeared for Plaintiffs.

Andrea G. White appeared for Defendant Dakota County.  Toni A. Beitz appeared for Defendant Hennepin County.  Joseph E. Flynn appeared for Defendants Chisago, Washington and Carver Counties.  Jon K. Iverson appeared for Defendants Cities of Bloomington, Burnsville, Eden Prairie, Lakeville, Apple Valley, Cottage Grove, Crosslake, Faribault, Hastings, New Hope, Roseville, St. Louis Park, Minnetrista, Richfield, Brooklyn Park, Maple Grove, Minnetonka, St. Cloud, Farmington, and South St. Paul, as well as for Defendant Centennial Lakes Police Department.

---

Plaintiffs Hilary Ann Kost and Jon Eldon DeVary filed this action against more than fifty named Defendants, including twenty-three cities and seven counties in Minnesota.  The First Amended Complaint ("complaint") makes claims against the Defendants under the Driver's Privacy Protection Act of 1994 ("DPPA"), 42 U.S.C. § 1983, and Minnesota state law for alleged impermissible accesses of Plaintiffs' personal data maintained by the Minnesota Department of Public Safety ("DPS").  Presently before the Court are four motions filed by the following Defendants, collectively referred to as the "Moving Defendants": **(1)** Hennepin County; **(2)** Carver County, Chisago County, and Washington County ("County Defendants"); **(3)** Dakota County; and **(4)** the Cities of Bloomington, Burnsville, Eden Prairie, Lakeville, Apple Valley, Cottage Grove, Crosslake, Faribault, Hastings, New Hope, Roseville, St. Louis Park,

1

Minnetrista, Richfield, Brooklyn Park, Maple Grove, Minnetonka, St. Cloud, Farmington, and South St. Paul, along with the Centennial Lakes Police Department ("City Defendants"). The motions seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or request judgment on the pleadings under Rule 12(c). For the reasons stated below, all four motions are granted.

## BACKGROUND

Plaintiffs Kost and DeVary are licensed private investigators and are married to each other. In January 2013, they received a letter from the Minnesota Department of Natural Resources ("DNR") notifying them that a former DNR employee had engaged in unauthorized viewing of private data from their motor vehicle records kept by the DPS. On receipt of the DNR letter, Plaintiffs sought an audit of all releases by the DPS of their motor vehicle records.

From the audit, Plaintiffs "discovered numerous incidents of unlawful access" of their personal information by various cities, counties, private entities, and other organizations. The complaint includes and incorporates four exhibits with information that Plaintiffs obtained from the Division of Driver and Vehicle Services ("DVS") and Bureau of Criminal Apprehension ("BCA"), departments of the DPS that maintain databases containing motor vehicle record data. The exhibits include entries corresponding to accesses of Plaintiffs' data that provide information such as the date of access, the time, and the entity involved. Multiple sets of entries have the same transaction number and/or time. Plaintiffs redacted entries that they "believed to be legitimate instances of use of the records." Each of the Moving Defendants appears on the exhibits as having accessed Plaintiffs' data. The complaint states that Plaintiffs did not authorize any of the accesses and "are not aware of any legitimate reason any of the Defendants may have had to access" their data.

The complaint does not allege any other facts regarding the particular accesses by any of the Moving Defendants, although it makes certain factual allegations without mention of a specific Defendant. The complaint states that on or around March 20, 2006, an article titled "Cheating? She's Watching" appeared in the St. Paul Pioneer Press, which highlighted the work of Plaintiff Kost. The complaint contends that the exhibits show "clusters" of accesses shortly after the article's publication. Similarly, the complaint alleges an increase in accesses after an interview on television and mentions in news articles, in the late summer and fall of 2011, of Plaintiff Kost's work as a private investigator in a high profile matter of child abandonment. The complaint also alleges that a former police officer and neighbor of Plaintiff DeVary and his previous wife, who had taken a special interest in their child, told the child that he obtained Plaintiff Kost's data through law enforcement personnel to check her out and determine whether she was a safe driver. The complaint does not identify the former officer or the time period in which he obtained the information.

The complaint lists five counts, four of which involve the Moving Defendants. Count I of the complaint alleges violations of the DPPA by all Defendants. Count II asserts claims under 42 U.S.C. § 1983 for violations of Plaintiffs' rights against individual John and Jane Does employed by the Moving Defendants. Count III alleges § 1983 claims against the Moving Defendants, asserting liability for an alleged custom and practice of illegal accesses of individuals' private motor vehicle record data. Count V claims Negligent Infliction of Emotional Distress against the Moving Defendants. On the motion of other Defendants, the Court previously held that claims under 42 U.S.C. § 1983 are unavailable for violations of any statutory or constitutional rights under the facts alleged in the complaint. *See Kost v. Hunt*, Civ. No. 13-583, 2013 U.S. Dist. LEXIS 145148, at *15-16 (D. Minn. Oct. 8, 2013). Counts II and III will

be dismissed for the reasons stated in that order.  *See id.*; *Kiminski v. Hunt*, Civ. No. 13-185, 2013 U.S. Dist. LEXIS 157829, at *25-43 (D. Minn. Sept. 20, 2013).  Thus, only Counts I and V need to be presently addressed in ruling on the Moving Defendants' motions.

## DISCUSSION

The same standard applies to a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c).  *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, the complaint must do more than merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery."  *Twombly*, 550 U.S. at 561 (internal quotation marks omitted).  It must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In ruling on a motion to dismiss, a court accepts the facts alleged in the complaint as true and grants all reasonable inferences supported by the facts alleged in favor of the plaintiff.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009).  "This tenet does not apply, however, to legal conclusions or formulaic recitation of the elements of a cause of action; such allegations may properly be set aside."  *Id.* (internal quotation marks omitted).

Although filed separately, the four motions make some of the same or overlapping arguments for dismissal.  As to Plaintiff's DPPA claim, one or more motions raise certain issues that potentially affect Plaintiffs' claims against all of the Moving Defendants.  These issues will first be addressed and then the individual motions discussed.

## I.      The DPPA Claims and Issues Common to Moving Defendants

The DPPA protects certain "personal information" contained in motor vehicle records. *See* 18 U.S.C. §§ 2721-2725. The statute defines "personal information" as "information that identifies an individual," and includes a person's photograph, social security number, driver identification number, name, address, telephone number, and medical or disability information. *Id*. § 2725(3). The first section of the DPPA starts with a general provision specifying that a state department of motor vehicles ("DMV") and its representatives "shall not knowingly disclose or otherwise make available" personal information "about any individual obtained by the department in connection with a motor vehicle record" except as allowed for under 18 U.S.C. § 2721(b). *Id.* § 2721(a)(1).

The exception provision, 18 U.S.C. § 2721(b), enumerates multiple permissible uses of personal information for various governmental and business purposes:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> (2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.
>
> (3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—
> (A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and
> (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the

execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

The statute designates a subset of the "personal information" as "highly restricted personal information" and places further limitations on its disclosure by state DMVs. *See id.* §§ 2725(4), 2721(a)(2). In addition to the restrictions of 18 U.S.C. § 2721(a) on state DMVs, the DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted" under 18 U.S.C. § 2721(b). *Id.* § 2722(a). The DPPA provides for a civil action as follows:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

*Id*. § 2724(a). A "person" who can be sued is defined as an "individual, organization or entity, but does not include a State or agency thereof." *Id.* § 2725(2).

The Moving Defendants raise at least three shared issues in connection with Plaintiffs' DPPA claims. First, they contend that any claims relating to accesses of Plaintiffs' data prior to four years from the filing of the complaint are time-barred. Second, they seek a ruling that under the DPPA's remedies provision, Plaintiffs must show some actual damages to get any liquidated damages. Third, they argue that merely searching or viewing data does not amount to "obtaining" it for purposes of liability under the DPPA's civil action provision.

### A. Time-barred DPPA Claims

The Moving Defendants seek dismissal of Plaintiffs' DPPA claims related to any accesses occurring earlier than four-years from the date of the filing of the complaint—March 14, 2013—on statute of limitations grounds. Exhibits 1-4 to the complaint itemize the alleged improper accesses of Plaintiffs' motor vehicle record data by the Defendants for which Plaintiffs seek relief under the DPPA. The listings include accesses of Plaintiffs' information as early as 2003 and Plaintiffs take the position that they are entitled to relief for all the accesses included on the exhibits.

The DPPA does not include a statute of limitations provision. It is, however, subject to the general statute of limitations provided for by 28 U.S.C. § 1658(a), which states that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." That section was enacted on December 1, 1990. Because the DPPA was

7

enacted in 1994, the limitation of 28 U.S.C. § 1658(a) applies.  *See Smythe v. City of Onamia*, Civ. No. 12-3149, 2013 U.S. Dist. LEXIS 78948, at *15-16 n.3 (D. Minn. June 5, 2013) (noting that the default four-year limit applies to the DPPA).

The parties do not dispute that the four-year limitation applies to Plaintiffs' DPPA claims. Rather they dispute when the four-year period began to run.  Plaintiffs contend that the so-called "discovery rule" applies to DPPA claims such that the clock only started ticking once they discovered the accesses in early 2013.  The Moving Defendants argue that the clock on each improper access began running at the time the access occurred.

The Moving Defendants are correct.   Section 1658(a) starts the clock at the time when "the cause of action accrues."  28 U.S.C. § 1658(a).  In a recent case, the Supreme Court made clear that "the standard rule is that a claim accrues when the plaintiff has a complete and present cause of action."  *Gabelli v. SEC*, 133 S. Ct. 1216, 1220 (2013) (internal quotation marks omitted).  The Court explained that a "discovery rule" arose in fraud cases as an exception to the standard rule.  *See id.* at 1221; *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644-45 (2010) ("The rule arose in fraud cases as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a complete and present cause of action." (internal quotation marks omitted)).  Under the discovery rule, accrual of a claim is delayed until the plaintiff "discovers" his or her cause of action.  *Merck*, 559 U.S. at 644-45.

The unfairness of applying a statute of limitations in a case of fraud, where a defendant's deceptive conduct might prevent a plaintiff from knowing he or she has been defrauded, provided the rationale for the discovery rule exception.  *See id.*  Since the initial recognition of the exception, courts have generally understood that fraud is deemed to be "discovered" at such

time as it *could have been discovered* by the exercise of reasonable diligence. *Id.* More recently, courts and statutes have applied the discovery rule to claims outside the fraud context. *Id.*

Plaintiffs contend that the Eighth Circuit's opinion in *Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 944 (8th Cir. 2007), mandates that the discovery rule applies as a default unless the statute at issue directs otherwise. In particular, Plaintiffs point to the statement in *Comcast* that "[i]n federal question cases, the discovery rule applies in the absence of a contrary directive from Congress." 491 F.3d at 944 (internal quotation marks omitted). Based on *Comcast*, Plaintiffs argue that their DPPA claims only accrued and the statute of limitations began to run around the time they received the letter from the DNR notifying them of Defendant Hunt's unauthorized accesses of their private data in early 2013.

But *Comcast* predated the Supreme Court's decision in *Gabelli*. Plaintiffs attempt to distinguish *Gabelli* and render it inapplicable on its facts. In particular, they point out that *Gabelli* involved a claim by the Securities and Exchange Commission ("SEC") seeking a civil penalty against an investment advisor engaged in unlawful trading practices. They note that the Supreme Court declined to apply the discovery rule to an SEC claim based on events occurring prior to the time allowed by the applicable statute of limitations because the SEC's mission is to investigate potential violations of the securities laws. *See Gabelli*, 133 S. Ct. at 1222. While the Supreme Court did distinguish the SEC in a civil enforcement action from a private litigant who might have sustained a self-concealing injury, *see id.*, the implication of that distinction is not what Plaintiffs advocate. Rather, the Supreme Court's reasoning in reaching the outcome in *Gabelli* confirms that its starting point was that application of the discovery rule is an exception that has become standard in *fraud* cases. The Court highlighted the difference between the SEC and a private litigant to make the point that the *typical* discovery rule *exception* in fraud cases

9

should not apply to the SEC enforcement claim at issue, even though the underlying violation sounded in fraud. *See id.* ("There are good reasons why the *fraud discovery rule* has not been extended to Government enforcement actions for civil penalties." (emphasis added)). The Court did not suggest that the discovery rule is the standard in all cases for private litigants.

To the contrary, *Gabelli* should be read as seriously undermining, if not rendering obsolete, earlier statements by the lower courts that the discovery rule operates as a default. *See Gabelli*, 133 S. Ct. at 1220 (quoting *Wallace* v. *Kato*, 549 U.S. 384, 388 (2007), for the "standard rule"). The *Wallace* case quoted by the *Gabelli* opinion confirms that the reference to the "standard rule" applies to federal law generally. *See Wallace*, 549 U.S. at 388 (noting, in the context of a claim under 42 U.S.C. § 1983, that the "federal rules conform[] in general to common-law tort principles" and under "those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action") (internal quotation marks omitted). Moreover, the *Gabelli* opinion concludes leaving no doubt that the rule in general is that the discovery rule is an exception:

> As we held long ago, the cases in which "a statute of limitation may be suspended by causes not mentioned in the statute itself . . . are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it." *Amy v. Watertown (No. 2)*, 130 U.S. 320, 324, 9 S. Ct. 537, 32 L. Ed. 953 (1889) (internal quotation marks omitted). Given the lack of textual, historical, or equitable reasons to graft a discovery rule onto the statute of limitations [at issue], we decline to do so.

133 S. Ct. at 1224. Accrual at the time the plaintiff has a complete and present cause of action must therefore be treated as the standard in evaluating the statute of limitations for DPPA claims.

The question then becomes whether "textual, historical, or equitable reasons" warrant grafting a discovery rule onto the statute of limitations of 28 U.S.C. § 1658(a) for DPPA claims. It does not appear that any court has previously explicitly conducted the analysis in the context

of a DPPA claim.[1]  Cases explicitly analyzing the issue for other statutes subject to the catch-all statute of limitations provision of 28 U.S.C. § 1658(a) also appear scarce.  One example comes from the decision in *Gross v. Max*, 906 F. Supp. 2d 802 (N.D. Ind. 2012), which evaluated whether the discovery rule applies to claims under the Residential Lead-Based Paint Hazard Reduction Act.

Like the court in *Gross*, this Court finds that both the catch-all provision of 28 U.S.C. § 1658(a) and the statute under which the claim is asserted should be considered to determine whether the discovery rule exception applies to claims subject to 28 U.S.C. § 1658(a).  *See* 906 F. Supp. 2d at 811-13 (recognizing the "quirk" of having a separate statute provide the applicable statute of limitations to claims arising under a particular statute and applying a "two-pronged" inquiry).  As to 28 U.S.C. § 1658, the text and structure of the provision do not reflect congressional intent to generally incorporate the discovery rule to claims subject to subsection (a).  Section 1658(a) uses the key term "accrues" in specifying that a claim must be brought within four-years of when "the cause of action accrues."  The statute of limitations provision at issue in *Gabelli*, 28 U.S.C. § 2462, similarly used the phrase "when the claim first accrued" in specifying the relevant time period, and the Supreme Court concluded that "the most natural

---

[1]     Plaintiffs point to one case—*English v. Parker*, Civ. No. 09-1914, 2011 U.S. Dist. LEXIS 51889 (M.D. Fla. May 16, 2011)—in which they contend that "the court applied the discovery rule to a DPPA claim."  Defendants point to two class action cases in which the courts applied the four-year limitation in designating the class scope, such that plaintiffs with claims of DPPA violations occurring prior to four years from the lawsuit filing date would be excluded.  *See Haney v. Recall Ctr.*, 282 F.R.D. 436, 438 (W.D. Ark. 2012); *Roberts v. Source for Pub. Data*, Civ. No. 08-4167, 2009 U.S. Dist. LEXIS 107057, at *20-21 (W.D. Mo. Nov. 17, 2009).  Other courts have also referenced the four-year limitation period in passing.  *See Smythe v. City of Onamia*, Civ. No. 12-3149, 2013 U.S. Dist. LEXIS 78948, at *15-16 n.3 (D. Minn. June 5, 2013); *Hurst v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 10-1001, 2012 U.S. Dist. LEXIS 39347, at *28-29 (D. Del. Feb. 9, 2012).  None of these cases, however, explicitly analyze whether or not the discovery rule should apply in determining when a DPPA claim accrues, even though some of them reflect an implicit determination of the issue.

reading of the statute" means that the clock begins to tick when the claimed violation occurs. 133 S. Ct. at 1221-22.

Additionally, the use of the term "accrues" in 28 U.S.C. § 1658(a) stands in contrast to the language of the next subsection, which outlines an exception for certain cases. Subsection (b) provides that in cases of "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws," the claim must be brought not later than the earlier of two years after "*discovery* of the facts constituting the violation" or five years after the violation. 28 U.S.C. § 1658(b) (emphasis added). The provision explicitly refers to "discovery" and, in the statute of limitations context, that word is understood as a term of art for the discovery rule. *See Merck*, 559 U.S. at 644. Congress created § 1658(b) by amendment in 2002, but left the language of the general provision that is § 1658(a) without any reference to conditions under which a discovery rule would apply. *See Gross*, 906 F. Supp. 2d at 812-13. Given the baseline mandated by *Gabelli*, the use of "accrues" in § 1658(a) in contrast to the reference to a "discovery" condition in § 1658(b) further signals the absence of an intent to incorporate a discovery rule in any form into § 1658(a). *See also id.*

As to the DPPA itself, at least two considerations confirm that it does not call for a general application of the discovery rule exception. First, the substantive area covered by the DPPA is not one for which the Supreme Court has recognized a prevailing discovery rule and the injury against which the DPPA protects is not of a type that warrants extension of the discovery rule exception to DPPA claims. *See TRW Inc. v. Andrews,* 534 U.S. 19, 27 (2001) (identifying fraud, latent disease, and medical malpractice as typically calling for application of the discovery rule exception). In particular, the DPPA provides certain protections for personal information contained in motor vehicle records. The primary motivating concerns for the DPPA included

preventing use of such data for nefarious purposes and transfers of the data for advertising purposes without consent. *See Maracich v. Spears*, 133 S. Ct. 2191, 2198 (2013); *Cook v. ACS State & Local Solutions, Inc.*, 663 F.3d 989, 992 (8th Cir. 2011). Thus, the main injury targeted by the DPPA is harm that would readily be knowable in conjunction with, or soon after, the DPPA violation, because someone uses the data in reaching out to the plaintiff for threatening or advertising purposes. In other words, unlike latent disease or medical malpractice, the targeted injury is not of a type that, by its nature, tends to reveal itself later or without a readily determinable cause. *Cf. Urie v. Thompson*, 337 U.S. 163, 169-71 (1949); *Brazzell v. United States*, 788 F.2d 1352, 1355-56 (8th Cir. 1986). Also, unlike fraud, the harm targeted by the DPPA is not of a type likely to be detected belatedly or with difficulty because of a defendant's deceptive conduct.

Second, the DPPA includes a records maintenance provision for resellers of personal information that comports with a determination that the discovery rule does not generally apply to indefinitely extend the possible time-frame for an action. *See* 18 U.S.C. § 2721(c). Section 2721(c) allows certain authorized recipients of personal information to resell or redisclose the information for uses permitted under 18 U.S.C. § 2721(b) with some qualifications. But it requires that the disclosing recipient "keep for a period of 5 years" records of the receiving party and the permitted purpose for its use of the information. *Id.* The civil action provision of 18 U.S.C. § 2724 reaches disclosure violations by authorized recipients. Thus the record maintenance obligation for them for a limited period of 5 years further supports a finding that the DPPA does not envision unbounded extensions of the time period in which a suit might be brought.

Plaintiffs argue that even if the discovery rule does not apply, the doctrine of "equitable tolling" should be applied to toll the statute of limitations. That doctrine "permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances." *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 675 (8th Cir. 2009) (quoting *Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 875 (8th Cir. 2006)). But equitable tolling offers "an exceedingly narrow window of relief" and courts "rarely invoke doctrines such as equitable tolling to alleviate a plaintiff from a loss of his right to assert a claim." *Id.* (internal quotation marks omitted). "Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling is an exception to the rule, and should therefore be used only in exceptional circumstances." *Motley v. United States*, 295 F.3d 820, 824 (8th Cir. 2002) (internal quotation marks omitted). A party seeking equitable tolling bears the burden of showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Johnson v. Hobbs*, 678 F.3d 607, 610 (8th Cir. 2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Plaintiffs cannot show that any extraordinary circumstances prevented them from filing their claims within the statute of limitations period. Rather, they point to their lack of knowledge about any accesses of their data until receipt of the DNR letter, which triggered them to seek an audit of all accesses of their data. They do not contend that they could not have conducted the very same audit earlier, but only that they did not have any reason to do so. But treating Plaintiffs' mere lack of knowledge of an injury—in the absence of any external factor that stood in their way of discovery—as sufficient for equitable tolling, would essentially create an end-run around the Court's finding that the discovery rule does not apply to DPPA claims. The doctrine of equitable tolling is not intended to rescue claims in these circumstances. Rather, application

of the doctrine is an exercise of a court's equity powers and is intended for situations that "demand equitable intervention" to correct particular injustices. *See Holland v. Florida,* 130 S. Ct. 2549, 2563 (2010); *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1330 (8th Cir. 1995) (noting that application of the doctrine requires a "case-by-case analysis," a "balancing of the equities," and application "only in exceptional circumstances"). Given the nature of the rights at issue, the lack of any facts in the complaint indicating significant harm to the Plaintiffs, the absence of any attempt by Defendants to prevent Plaintiffs from learning of their claims, the potential prejudice to the Defendants, and the absence of an extraordinary barrier to obtaining the audit information, this case is not one in which the equities favor applying the doctrine of equitable tolling.

### B. Actual Damages

The City Defendants' motion asks the Court to decide whether the DPPA's remedies provision allows for a liquidated damages award if Plaintiffs did not suffer any actual damage. The DPPA provision for remedies available in a civil action provides:

> (b) Remedies. The court may award--
>     (1) actual damages, but not less than liquidated damages in the amount of $ 2,500;
>     (2) punitive damages upon proof of willful or reckless disregard of the law;
>     (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and
>     (4) such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2724(b). Although both sides devote significant space in their briefs to the damages question, the Court declines to decide it. Doing so would be premature, because the remedies provision does not show that entitlement to actual or liquidated damages under 18 U.S.C. §

2724(b)(1) is a prerequisite for stating a claim upon which relief can be granted for a DPPA violation.[2]

The remedies provision enumerates a list of potential remedies that "[t]he court *may* award." *See id.* (emphasis added). As the Eleventh Circuit explained, "[t]he use of the word 'may' suggests that the award of any damages is permissive and discretionary." *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1216 (11th Cir. 2005). The only other appellate court to consider the actual damages provision also found that "[t]he language of the DPPA indicates a certain degree of discretion granted to the court in awarding damages." *Pichler v. Unite*, 542 F.3d 380, 394-400 (3d Cir. 2008) (citing *Kehoe*, 421 F.3d at 1216-17).

In *Kehoe*, the district court had granted summary judgment to the defendant on a DPPA claim, determining that actual damages must be shown to receive any liquidated damages and concluding that the plaintiff could not maintain a DPPA claim without proof of actual damages. 421 F.3d at 1211. While the Eleventh Circuit reversed the district court's determination that some actual damage was a prerequisite for liquidated damages, the court noted in a footnote that "[e]ven if we were to conclude that proof of actual damages was necessary to be awarded liquidated damages, we still would have to remand this case to district court for consideration of the other available remedies requested by Kehoe." *Id.* at n.1. The complaint here claims entitlement to the other categories of potential relief in addition to actual damages.

---

[2]     To the extent the City Defendants attempt to raise a standing question by implying that Plaintiffs have not suffered an injury in fact, they cannot succeed. As the Seventh Circuit explained, the DPPA's civil action provision defines the relevant injury for standing purposes as the obtainment, disclosure, or use of an individual's motor vehicle record information. *See Graczyk v. West Publ'g Co.*, 660 F.3d 275, 278 (7th Cir. 2011); *see also Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before"). Plaintiffs claim that the Moving Defendants obtained their data for an impermissible purpose and so dismissal on standing grounds would not be proper.

Consequently, dismissal over the narrow issue of whether the complaint adequately pleads actual damages would be inappropriate and the damages question posed by the City Defendants need not be decided at this stage.

## C. Obtainment

The City Defendants also seek a ruling as a general matter that "[i]f driver's license data is merely searched or viewed it is not 'obtained, disclosed, or used' for purposes of" liability under the DDPA. They primarily focus on the meaning of "obtainment" in the context of the civil action provision of 18 U.S.C. § 2724(a). But the Court cannot make the requested ruling in the abstract, because whether a particular act qualifies as "obtainment" under the provision—and then further whether the act satisfies the conditions under § 2724(a) that the defendant "knowingly obtains" the information "for a purpose not permitted"—depends on the circumstances involved.

A consideration of the plain meaning of the term "obtain" and a simple thought experiment confirms this point. Dictionary definitions of the term "obtain" use descriptors that signal acquisition or possession. *See, e.g.*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 2001) ("to gain or attain"); *Shorter Oxford English Dictionary* (6th ed. 2007) ("come into the possession or enjoyment of; secure or gain as the result of request or effort; acquire, get"). Given the plain meaning of the term "obtain" in common usage, a person who steals a disk with the entire DPS database on it would be said to have obtained the information, even if she has not yet viewed a single record. *See also Cook*, 663 F.3d at 994 (referring to receipt of the entire database in terms of "obtaining" it). If she then pulled up a record from the disk and viewed it on her computer, it would be incongruous to say that she again obtained the information, since she already had possession of it by virtue of her earlier acquisition of the disk.

But suppose she stepped out of the room, and someone else came in and pulled up a record from the disk to view it. That person's viewing of the information would be conflated with his obtainment of it, such that he would be said to have obtained the information when he viewed it. Consequently, resolution of the dispute over whether the complaint states a DPPA violation against the Moving Defendants cannot turn on evaluating whether "searching" or "viewing" in the abstract constitutes obtainment. Rather, the allegations of the complaint must be evaluated to determine whether they state a violation under 18 U.S.C. § 2724(a).

## II. Complaint's Allegations Against the Moving Defendants

### A. DPPA Claims

To survive the present motions, Plaintiffs' complaint must state sufficient facts to make it plausible that each of the Moving Defendants knowingly obtained, disclosed, or used Plaintiffs' personal information for an impermissible purpose. *See* 18 U.S.C. § 2724(a). The exhibits to the complaint contain the only information specific to the actions of the individual Moving Defendants. Those exhibits lay out the fact that the Moving Defendants accessed Plaintiffs' information at particular times.

Defendants contend that those accesses alone do not amount to "obtainment" in the absence of facts alleging subsequent *use* of the data.[3] But the plain language of the civil action provision shows that an act of obtainment *or* of use may be the basis for liability as the provision

---

[3]     Some of the Defendants also contend that in *Sekhar v. United States*, 133 S. Ct. 2720 (2013), the Supreme Court defined the term "obtains" in a manner that would exclude mere searching or viewing of information. But *Sekhar* does not address the definition of "obtains" in isolation. Rather the opinion discusses the phrase "obtaining of property" in the context of the Hobbs Act's definition of the crime of extortion. *See Sekhar*, 133 S. Ct. at 2723-25. The Court's statement that "[o]btaining property requires 'not only the deprivation but also the acquisition of property,'" relates to how the extortion provision at issue should be interpreted. *See id*. at 2725 (quoting earlier cases that discuss the elements of the crime of extortion under the Hobbs Act). *Sekhar* does not supply a stand-alone definition of the term "obtains" that can be applied in the context of the DPPA's reference to obtaining information.

provides for liability against a person who "knowingly obtains, discloses or uses" personal information for an impermissible purpose. *See id.* The use of the disjunctive "or" confirms that obtainment may, at least under some circumstances, be a liability-inducing act without a subsequent use. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 338-39 (1979) (explaining that words connected by a disjunctive "or" ordinarily have separate meaning and independent significance).

The plain language of the provision, however, also makes clear that the personal information must be knowingly obtained "for a purpose not permitted." *See* 18 U.S.C. § 2724(a); *see also Kiminski*, 2013 U.S. Dist. LEXIS 157829, at *14-16. The complaint must therefore allege facts regarding each of the individual Moving Defendants that support an inference that the Defendant knowingly accessed Plaintiffs' data for an impermissible purpose. Plaintiffs bear the burden of making a showing of an impermissible purpose. *See* Fed. R. Civ. P. 8(a). The only appellate court to have analyzed the burden question in detail confirmed that a plaintiff asserting a DPPA violation must make a showing of an impermissible purpose. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1110-14 (11th Cir. 2008).

The complaint fails to allege factual content against any of the Moving Defendants—all of whom are governmental entities—that supports a "reasonable inference" of an impermissible purpose for accessing Plaintiffs' data. *See Iqbal*, 556 U.S. at 678. The DPPA includes a significant general exemption for the operations of governmental agencies. The very first permissible use of motor vehicle data specified by 18 U.S.C. § 2721(b) is

> [f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

The statute and its legislative history show that this exemption is intended to broadly cover the operations of governmental entities.

Legislators explicitly noted that the DPPA was designed to ensure that "federal and state governments and their contractors" will "continue to have unfettered access" to motor vehicle record information:

> Careful consideration was given to the common uses now made of this information and great efforts were made to ensure that those uses were allowed under this bill. *Among those who will continue to have unfettered access are federal and state governments and their contractors*, for use in auto recalls, by businesses (such as an insurance company) to verify the accuracy of personal information submitted by a licensee, for use in any civil or criminal proceeding, in research activities, and in marketing activities as long as the individual has been given the opportunity to opt out.

*Protecting Driver Privacy: Hearings on H.R. 3365 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 103d Cong., 2d Sess., 1994 WL 212698 (1994) (Statement of Rep. James P. Moran) (emphasis added); *see Smythe*, 2013 U.S. Dist. LEXIS 78948, at *14 ("With the exception of misuse, the DPPA's legislative history indicates a desire to preserve broad discretion for law enforcement agents to retrieve information in the course of their duties.").

The language of the government use exception of § 2721(b)(1) reflects congressional intent to leave essentially intact governmental agencies' ability to access and use motor vehicle record data in conducting their operations. The provision uses broad language in allowing for use of the data by a government agency "in carrying out its functions." Unlike the other provisions that define an exemption by reference to the user of the data as well as the use, the exception for government use under (b)(1) does not include more specific qualifications or limitations. *Cf.* 18 U.S.C. § 2721(b)(3) (restricting "use in the normal course of business by a legitimate business" to particular uses); § 2721(b)(6) (limiting insurance-related parties to uses

"in connection with claims investigation activities, antifraud activities, rating or underwriting");
§ 2721(b)(8) (limiting use by licensed private investigative agencies or security services for "any purpose permitted" under the section). Also, unlike the exemption of § 2721(b)(4) for data uses in connection with court and agency proceedings, the government functions exemption does not include specific examples suggestive of limited categories of activities covered by the provision. In evaluating the scope of § 2721(b)(4), the Supreme Court pointed to its enumeration of specific examples as indicative and restrictive of the type of attorneys' conduct related to litigation that the exemption covers. *See Maracich v. Spears*, 133 S. Ct. at 2201-02.

To survive the present motions, the complaint must include factual allegations of an impermissible purpose for each of the Moving Defendants in light of the broad range of permissible uses that a governmental agency might have for motor vehicle data. Moreover, although Plaintiffs have sued Defendants in a single action, Plaintiffs' claims against each Moving Defendant must be evaluated independently. Although Plaintiffs assert similar claims against the Moving Defendants, the claims against each stand alone, as no concert of action has been alleged. Each of the motions must be evaluated with these considerations in mind.

### i. Hennepin County's Motion (Docket No. 107)

Hennepin County seeks dismissal of all counts of the complaint against it, and if any counts survive, it seeks severance of the action against it. In their brief, Plaintiffs claim that Hennepin County obtained Plaintiff Kost's data at least ten times and Plaintff DeVary's data at least eight times. These numbers correspond to the number of entries on the exhibits to the complaint that list Hennepin County. Multiple entries, however, show the same transaction number or appear close in time. The exhibits include entries for Plaintiff Kost's data on

10/24/2006, 9/21/2007, and 12/7/2010. They show entries for Plaintiff DeVary on 7/8/2009 and 12/7/2010.

Exclusion of the accesses subject to the statute of limitations, leaves Hennepin County's accesses of Plaintiffs' data on 7/8/2009 and 12/7/2010 for consideration. The complaint does not allege any facts that support an inference that those accesses were for an improper purpose rather than a permissible use by a government agency in carrying out its functions, as allowed under 18 U.S.C. § 2721(b)(1). Even assuming that the complaint's allegations regarding data retrievals after some publicity stated enough to make impropriety plausible, neither instance of the publicity that Plaintiff Kost received implicates Hennepin County's accesses at issue. Any accesses around the time of the 2006 publicity would be outside the statute of limitations period and, at any rate, Hennepin County did not have any accesses at that time. Additionally, the other Hennepin County accesses all predate the publicity that the complaint mentions for Plaintiff Kost in the late summer and fall of 2011.

The complaint's reference to the actions of a former police officer is not connected to Hennepin County. Although the alleged facts signal that Plaintiffs know the identity of the offending former police officer, the complaint pointedly does not name him as a defendant. While the facts alleged regarding his actions might state a violation of the DPPA, he cannot be the basis to keep any and all defendants in the case in the absence of any alleged facts linking them to him. Thus, Plaintiffs fail to allege sufficient facts against Hennepin County to state a claim under the DPPA.

### ii. *The County Defendants' Motion (Dkt. No. 119)*

Defendants Carver County, Chisago County, and Washington County brought their motion under Federal Rules of Civil Procedure 12(b)(6) and 12(c). According to the exhibits to

the complaint, these Defendants only accessed Plaintiff DeVary's data. Carver County did so on 7/6/2010 and 7/9/2010; Chisago County on 7/31/2009; and Washington County on 1/6/2009. For the same reasons stated above for Hennepin County, the complaint fails to allege a claim under the DPPA against any of the County Defendants.

### iii. Dakota County's Motion (Dkt. No. 129)

Dakota County moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Excluding accesses for which any DPPA claim would be time-barred, Dakota County accessed Plaintiff Kost's data on 5/19/2010 and Plaintiff DeVary's data on 11/11/2009, according to the exhibits to the complaint. For the same reasons that applied to the Defendants discussed above, the complaint fails to state a DPPA violation based on those accesses and the complaint against Dakota County must be dismissed.

### iv. City Defendants' Motion (Dkt. No. 123)

The City Defendants filed a motion to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] The entries on Exhibits 1-4 reveal that the cities of Bloomington, Burnsville, Eden Prairie, Apple Valley, Cottage Grove, Crosslake, Faribault, Hastings, New Hope, Roseville, St. Louis Park, Minnetrista, Richfield, Brooklyn Park, Maple Grove, Minnetonka, St. Cloud, Farmington, and South St. Paul, as well as the Centennial Lakes Police Department, all stand in the same position as the Defendants who filed the other three motions. In particular, the complaint does not allege any facts regarding the City Defendants' accesses after March 14, 2009 that make an improper purpose for the accesses plausible.

---

[4]     The City Defendants filed an answer on August 7, 2013 and their motion to dismiss subsequently. A motion to dismiss under Rule 12(b)(6) must be "made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). But a motion under Rule 12(c) may be brought after the pleadings are closed and, because the distinction is purely formal, the motion may be treated as if styled under Rule 12(c). *See Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Of the facts related to Plaintiff Kost's publicity on two occasions and the incident with a former police officer, only the publicity in the late summer and early fall of 2011 needs to be considered. Two City Defendants, Crosslake and Lakeville, accessed Plaintiffs' data in 2011. For Crosslake, the complaint's exhibits show a single such entry, on May 21, 2011. Because that date precedes the alleged publicity at the end of summer and in the fall, the complaint fails to state any facts that bear on the impropriety of Crosslake's retrieval of Plaintiffs' data.

For Lakeville, the exhibits include some accesses of Plaintiffs' data within the "late summer and fall" period of 2011. But those entries do not stand out as significant or unusual when viewed against the history of Lakeville's accesses of Plaintiffs' data as shown in the exhibits. The exhibits list a single access of Plaintiff DeVary's data by the Lakeville Police Department in 2011. The access occurred on 10/28/2011. But the Lakeville Police Department accessed Plaintiff DeVary's data on other occasions in 2010 and earlier as well. For Plaintiff Kost, multiple entries with Lakeville in the name appear on 8/24/2011, 10/22/2011, 10/26/2011, 10/28/2011 and 11/18/2011. But in the same time period in 2009, Lakeville accessed her data on 9/8/2009, 9/24/2009, 9/29/2009, 10/2/2009, and 11/10/2009. Similarly, in 2010 there are entries on 9/27/2010, 8/12/2010, and 10/29/2010.[5] The accesses by Lakeville in the late summer and fall of 2011 do not stand out as unusual, and so they do not suggest an improper purpose connected to Plaintiff Kost's publicity. The complaint lacks any factual content that supports a reasonable inference that Lakeville accessed Plaintiffs' personal information in 2011, or at any other time, for an improper purpose.

---

[5] Entries with three transaction numbers appear on 10/22/11, but similarly, there are entries with three transaction numbers on 10/29/10.

**B. Negligent Infliction of Emotional Distress Claims**

As the Court previously found, Plaintiffs' state law claim for negligent infliction of emotional distress ("NIED") cannot survive the dismissal of their DPPA and § 1983 claims against a Defendant in this action. *See Kost*, 2013 U.S. Dist. LEXIS 145148, at *16-17. In particular, to adequately state an NIED claim, a complaint must meet the requirements of stating a negligence claim, which includes a duty of care and a breach of that duty, among other elements. *See id.*; *Engler v. Illinois Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005). Without a plausible DPPA claim or other violation under § 1983, Plaintiffs' complaint fails to state a breach that can support their NIED claim.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.     Defendant Hennepin County's Motion to Dismiss [Docket No. 107] is GRANTED.

2.     Defendants Carver County, Chisago County, and Washington County's Motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) [Docket No. 119] is GRANTED.

3.     Defendants Bloomington, Burnsville, Eden Prairie, Lakeville, Apple Valley, Cottage Grove, Crosslake, Faribault, Hastings, New Hope, Roseville, St. Louis Park, Minnetrista, Richfield, Brooklyn Park, Maple Grove, Minnetonka, St. Cloud, Farmington, South St. Paul, and Centennial Lakes Police Department's  Motion to Dismiss [Docket No. 123] is GRANTED.

4.     Defendant Dakota County's Motion for Judgment on the Pleadings [Docket No. 129] is GRANTED.

5.     The First Amended Complaint against Defendants Hennepin County, Carver County, Chisago County, Washington County, Bloomington, Burnsville, Eden Prairie, Lakeville, Apple Valley, Cottage Grove, Crosslake, Faribault, Hastings, New Hope, Roseville, St. Louis Park, Minnetrista, Richfield, Brooklyn Park, Maple Grove, Minnetonka, St.

Cloud, Farmington, South St. Paul, and Centennial Lakes Police
Department is DISMISSED.

Dated: November 15, 2013

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge